## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROBERT J. FELLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| UNITED COMMUNITY FINANCIAL CORP, | ) | |
| GARY M. SMALL, RICHARD J. SCHIRALDI, | ) | |
| LOUIS M. ALTMAN, MARTIN E. ADAMS, | ) | |
| PATRICK W. BEVACK, LEE J. BURDMAN, | ) | |
| SCOTT N. CREWSON, SCOTT D. HUNTER, | ) | |
| and ELLEN J. TRESSEL, | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Robert J. Fellman, by his undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against United Community Financial Corp. ("United Community" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed acquisition of United Community by First Defiance Financial Corp. ("First Defiance").

2.      On September 9, 2019, United Community and First Defiance entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which United Community's wholly owned bank subsidiary, Home Savings Bank ("Home Savings"), will merge with and into First Defiance's wholly owned bank subsidiary, First Federal Bank of the Midwest ("First Federal"), with First Federal continuing as the surviving entity, and United Community will merge with and into First Defiance, with First Defiance continuing as the surviving corporation, and (the "Proposed Transaction").

3.      Pursuant to the terms of the Merger Agreement, United Community's shareholders will be entitled to receive 0.3715 shares of First Defiance common stock (the "Exchange Ratio" or the "Merger Consideration").  Based on the trading price of First Defiance common stock at closing on the last day before the Proposed Transaction was announced, the Merger Consideration was worth approximately $9.78 per share of United Community common stock.

4.      On or about October 9, 2019, in order to convince United Community's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading S-4 Registration Statement (the "Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Registration Statement contains materially incomplete and misleading information concerning the background of the Proposed Transaction and the valuation analyses performed by United Community's financial advisors, Sandler O'Neill & Partners, L.P. ("Sandler O'Neill" or the "Financial Advisors") regarding the Proposed Transaction.

6.      The Proposed Transaction is expected to close "as soon as practicable" and the special meeting of the Company's shareholders to vote on the Proposed Transaction will be scheduled in the coming weeks.  Therefore, it is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the special meeting, so Plaintiff can properly exercise

his corporate voting rights.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to United Community's public common stockholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact

business in this District.  Indeed, United Community's common stock trades on the New York Stock

Exchange ("NYSE"), which is headquartered in this District.  *See, e.g., United States v. Svoboda*,

347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

<u>**PARTIES**</u>

11.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner

of United Community common stock.

12.      Defendant United Community is a publicly traded financial services holding

company that provides a wide array of consumer, commercial, wealth and insurance products and

services through its subsidiaries, Home Savings Bank ("Home Savings"), HSB Insurance, LLC, HSB

Capital, LLC and HSB Insurance, Inc.  United Community has its principal executive offices located

at 275 West Federal Street, Youngstown, Ohio 44503.  United Community's common stock is traded

on the Nasdaq Global Select Market ("Nasdaq") under the ticker symbol "UCFC."

13.      Individual Defendant Gary M. Small ("Small") is, and has been at all relevant times,

the Company's President and Chief Executive Officer and a director of the Company.

14.      Individual Defendant Richard J. Schiraldi ("Schiraldi") is, and has been at all relevant

times, the Chairman of the Company's Board of Directors.

15.      Individual Defendant Louis M. Altman ("Altman") is, and has been at all relevant

times, a director of the Company.

16.      Individual Defendant Martin E. Adams ("Adams"), is and has been at all relevant

times, a director of the Company.

17.      Individual Defendant Patrick W. Bevack ("Bevack") is, and has been at all relevant

times, a director of the Company.

18.      Individual Defendant Lee J. Burdman ("Burdman") is, and has been at all relevant

times, a director of the Company.

19.     Individual Defendant Scott N. Crewson ("Crewson") is, and has been at all relevant times, a director of the Company.

20.     Individual Defendant Scott D. Hunter ("Hunter") is, and has been at all relevant times, a director of the Company.

21.     Individual Defendant Ellen J. Tressel ("Tressel") is, and has been at all relevant times, a director of the Company.

22.     The Defendants identified in paragraphs 13 through 21 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## <u>SUBSTANTIVE ALLEGATIONS</u>

### Background of the Company and the Proposed Transaction

23.     United Community provides a wide array of consumer, commercial, wealth and insurance products and services through its wholly-owned subsidiary, Home Savings.  Home Savings is a full-service bank headquartered in Youngstown, Ohio with assets of approximately $2.8 billion, approximately 500 employees, 33 retail banking offices, 11 loan production centers, and three wealth management offices, servicing the Cleveland, Youngstown/Mahoning Valley, Akron/Canton, Columbus, and Cincinnati markets in Ohio, as well as Pittsburgh, Pennsylvania and Morgantown, West Virginia.

24.     United Community has grown considerably during the past few years and is well-positioned for continued growth.  For example, during the past few years, United Community has increased its banking profile, through the acquisition of Ohio Legacy Corp. and its subsidiary bank Premier Bank & Trust, and has also expanded its insurance reach with the acquisition of James & Sons, Eich Bros. Insurance, and the Chuck Stevens Property and Casualty Insurances business.

25.     In light of its recent financial performance, United Community had exceptional long-

term prospects prior to the announcement of the Proposed Transaction.  As the Company announced

in its July 23, 2019 Press Release entitled *UCFC Announces Record Earnings for the Second Quarter*

*and a Dividend Increase of 14%*:

> Gary M. Small, President and Chief Executive Officer of the Company commented, "The team delivered an outstanding quarter and each business line continues to contribute to our success. Balanced improvements in commercial banking, residential mortgage and our consumer business produced a very strong 9.9% net income improvement for the quarter versus the same period last year."
>
> Small continued, "Excellent earnings growth and an accelerated stock repurchase program combined to deliver EPS growth of 13%. Based on the strength and momentum of our performance, the board approved a 14% dividend increase. Capital management will remain a strategic priority as we are focused on delivering top tier returns for our shareholders."

26.     Indeed, the July 23, 2019 Press Release further boasted that "Home Savings continues

to produce excellent results over all lending categories," that "Asset quality remained strong during

the second quarter," and that the Company anticipated "continued expansion of operational leverage

over the remainder of the year."

27.     Thus, the Proposed Transaction comes at a time when United Community's recent

and future success was not fully reflected by its share price.  The Proposed Transaction will

"compensate" United Community stockholders with Merger Consideration that fails to adequately

compensate them for the intrinsic value of their shares.

28.     Despite United Community's intrinsic value and growth prospects, the Individual

Defendants are agreeing to a merger that deprives United Community's public stockholders of the

ability to partake in the Company's individual growth and instead dilutes the value of their United

Community stock with an inadequate interest in First Defiance.  The Individual Defendants breached

their fiduciary duties owed to United Community's stockholders by agreeing to the Proposed

Transaction for the unfair Merger Consideration, and by allowing the unfair and flawed sales process

to unfold in the manner that it did, which will cause Plaintiff and the Class to receive an inadequate

Merger Consideration while Company insiders receive millions of dollars in severance payments and accelerated stock unit vesting and Small himself will become the combined company's Chief Executive Officer.

**Background of the Merger and the Announcement of the Proposed Transaction**

29.     Discussions regarding a strategic combination of United Community and First Defiance date at least as far back as early 2017, when Small engaged in "exploratory discussions" with Donald Hileman, President and Chief Executive Officer of First Defiance.   Registration Statement, 53.

30.     In early 2019, Small discussed the possibility of a potential strategic transaction with five potential counterparties, four of which were contacted by Small and one of which contacted Small.  Registration Statement, 54.  Of the four that were contacted by Small, "one was not interested in a potential transaction and three had expressed some level of interest in engaging in discussions in the future but that due to other strategic priorities would not be prepared to engage in a transaction in the near-term." *Id.*  In light of Small's "expressed concerns regarding the attractiveness" of the fifth institution's stock as deal consideration, the Board "determined that Mr. Small should not make any further outreach at that time and should continue to focus on executing the company's strategy for organic growth." *Id.*

31.     In late April 2019, Hileman invited Small to "an informal meeting to discuss their organizations generally," which occurred on May 8, 2019 and at which Hileman and Small "discussed general industry matters" before Hileman "expressed interest in reengaging in discussions regarding a potential strategic business combination" with the Company.  Registration Statement, 54-55.

32.     At a meeting on May 23, 2019, Small updated the Board regarding Hileman's outreach and the Board "expressed its support for Mr. Small to continue these discussions to assess the viability of a strategic merger with First Defiance and the potential terms of such a transaction."

Registration Statement, 55.

33.     During the weeks after May 23, 2019, Small and Hileman "engaged in exploratory discussions," that "were focused on identifying and refining the potential strategic and financial benefits and risks associated with a transaction and on developing a high-level framework of the economic and governance terms of a transaction, including board and management split between representatives of each company, headquarters, surviving entity name and other matters." Registration Statement, 55.  The "key components" of such a combination contemplated: (i) an all-stock merger with a fixed exchange ratio with the price based on each company's "relative contribution to the pro forma surviving company," (ii) a "board split based on pro rata ownership of each company's shareholders of the surviving entity and each company having key leadership roles," and (iii) "a management succession plan whereby Mr. Small would succeed Mr. Hileman as Chief Executive Officer following an initial integration period and Mr. Hileman would at that time become Executive Chairman."  *Id.*

34.     In early June, Hileman and Small "reached a preliminary understanding, subject to diligence and further discussion with each company's board of directors, that if the parties were to combine, that United Community's shareholders would own approximately 47% of the pro forma surviving company, which corresponded to an exchange ratio of approximately 0.3636 based upon the parties' relative common stock prices at the time."  Registration Statement, 55.

35.     On July 23, 2019, the Board had a regularly scheduled meeting at which Sandler O'Neill presented "a preliminary financial analysis regarding a potential transaction with First Defiance," "a review of United Community's stand-alone valuation," and "a review of other potential strategic alternatives to the proposed transaction with First Defiance," and "and compared the potential transaction with First Defiance to its other potential strategic alternatives, including continuing to focus on organic growth as an independent company."  Registration Statement, 56.

36.    On August 15, 2019, the executive committee of the Board held a meeting "to receive a status report on the potential transaction," at which Sandler O'Neill "discussed with the United Community board that since the last United Community board meeting, First Defiance common stock had traded down relative to United Community common stock and the impact of such movements on the implied transaction value based on the 0.3636 exchange ratio that the parties had been discussing" would have resulted " in a small implied discount to United Community's then current common stock trading price."  Registration Statement, 57-58.

37.    After the August 15, 2019 meeting, United Community and First Defiance "continued their due diligence reviews" and "exchanged term sheets for the employment agreements for Mr. Small and Mr. Hileman that would be entered into with First Defiance contemporaneously with the execution of the merger agreement and would become effective as of the closing of the merger." Registration Statement, 58.

38.    Between August 15, 2019 and September 5, 2019, representatives of United Community and First Defiance discussed, negotiated, and ultimately approved the proposed employment agreements for Small and Hileman.  Registration Statement, 58-59.

39.    Also on September 5, 2019, Board held a special meeting, "with the primary purpose of the meeting being to formulate a proposal with respect to the exchange ratio," ultimately instructing management and Sandler O'Neill "to propose an increased exchange ratio of 0.3715, which would increase the pro forma ownership in the surviving entity of United Community shareholders from 47% to 47.5%, as well as a special cash dividend payable to United Community shareholders prior to closing, if necessary, to address any remaining discount implied by the transaction value as compared to the closing price of United Community's common stock as of the signing of the merger." Registration Statement, 59.

40.    On September 6, 2019, after market close, First Defiance indicated that "pending final

board approval," First Defiance "was in agreement with the proposed exchange ratio of 0.3715, which

represented an implied premium to United Community's closing price on September 6, 2019 of $0.17

or 1.7%, but as a result, First Defiance had determined that the special dividend proposal was moot."

Registration Statement, 59-60.  "Sandler O'Neill and United Community agreed that, pending board

approval on both sides, the special dividend proposal would be moot." *Id.*

41.   Prior to the opening of U.S. stock markets on September 9, 2019, United Community

and First Defiance issued a joint press release to announce the Proposed Transaction:

### First Defiance Financial Corp. and United Community Financial Corp. Announce Strategic Merger

**Now Positioned as the Premier Midwest Franchise**

- Transformative partnership that creates a premier community bank based in Ohio with over $6 billion in assets and operations throughout Ohio, Michigan, Indiana, Pennsylvania & West Virginia
- Enhances scale and financial performance, diversifies business lines and leverages strengths in commercial banking, residential lending and fee income across both institutions
- Compelling value creation for both companies' shareholders as demonstrated by substantial run-rate EPS accretion
- The companies' similarly situated markets, credit culture and relationship banking approach create an excellent strategic fit
- The combined company will operate under a name to be jointly determined prior to closing with the holding company headquartered in Defiance, Ohio, and the bank headquartered in Youngstown, Ohio

September 09, 2019 07:31 AM Eastern Daylight Time
DEFIANCE & YOUNGSTOWN, Ohio--(BUSINESS WIRE)--First Defiance Financial Corp
(Nasdaq: FDEF) ("First Defiance") and United Community Financial Corp. (Nasdaq: UCFC)
("United Community") announced today the signing of a definitive merger agreement under
which United Community will merge into First Defiance in a stock-for-stock transaction.
Home Savings Bank, a wholly owned subsidiary of United Community, will merge into First
Federal Bank of the Midwest, a wholly owned subsidiary of First Defiance.

"I truly believe that this merger is a win-win for all stakeholders: customers, associates,
shareholders as well as the communities we serve."

Under the terms of the merger agreement, shareholders of United Community will receive
0.3715 shares of First Defiance common stock for each share of United Community common
stock. Based upon a closing price for First Defiance as of September 6, 2019 of $26.32, the
transaction is valued at approximately $473 million. Upon closing, First Defiance shareholders

will own approximately 52.5% of the combined company and United Community shareholders will own approximately 47.5%.

First Defiance and United Community believe that this strategic business combination is extremely attractive to shareholders of both companies. Both sets of shareholders will benefit from the synergies created by the transaction and the significantly increased size and scale of the pro forma company will generate efficiencies, strengthen operating leverage and further enhance shareholder value.

The merger combines two complementary banking platforms, and First Defiance and United Community consider this partnership an ideal strategic, financial and operational fit, particularly given their respective strong and consistent performance over time. The pro forma combined company will have approximately $6.1 billion in assets, $5.0 billion in loans and $4.9 billion in deposits, utilizing financial information as of June 30, 2019. It will leverage the respective strengths of each institution in commercial banking, residential lending, retail, insurance and wealth management and better position the combined company to serve the geographies of Ohio, Michigan, Indiana, Pennsylvania and West Virginia with increased scale and expanded product offerings.

"After a long relationship between the two companies, we are thrilled to bring together these two great Ohio community bank franchises. These organizations are a perfect strategic fit, balancing the strengths of each. With enhanced scale, we will have the opportunity to continue to grow and compete more effectively in all the markets we serve for the foreseeable future," said Donald P. Hileman, President and Chief Executive Officer of First Defiance.

"We are pleased to partner with a company that has a shared community-minded vision, culture and focus on performance," said Gary M. Small, President and Chief Executive Officer of United Community. "I truly believe that this merger is a win-win for all stakeholders: customers, associates, shareholders as well as the communities we serve."

As part of the merger, both CEOs will play critical roles in leading the integration of the companies. Once the merger is complete, Donald P. Hileman will serve as the Chief Executive Officer of the holding company and the bank before transitioning to an Executive Chairman role in early 2021. Gary M. Small will assume the role of President of the holding company and the bank before transitioning to the Chief Executive Officer role when Mr. Hileman becomes Executive Chairman. Together they will lead the company and partner on overall strategy, management and performance of the company. In addition to these roles, the executive management team and employees of the combined company will continue to provide an unsurpassed customer-focused culture.

The Board of Directors of the combined company will be comprised of seven members designated by First Defiance (including Mr. Hileman and its current Chairman, John Bookmyer) and six members designated by United Community (including Mr. Small and its current Chairman, Richard Schiraldi who will be named Vice Chairman). The directors of the combined company will be determined in the coming months and identified prior to the closing of the transaction.

The transaction is expected to close early in the first quarter of 2020, subject to the approval of shareholders of both First Defiance and United Community and regulatory approvals, as well as satisfaction or waiver of other customary closing conditions. The combined company will

operate under a name to be jointly determined prior to closing and the holding company will be headquartered in Defiance, Ohio with the bank headquartered in Youngstown, Ohio. The combined company will continue to provide the substantial philanthropic and community investment provided by First Defiance and United Community prior to the merger.

First Defiance expects the transaction to deliver run-rate earnings per share accretion of approximately 14%, with cost savings on a fully-phased in basis. Applying pro forma merger adjustments and assuming an expected early 2020 closing, dilution to tangible book value per share is estimated to be approximately 4%, inclusive of restructuring charges with an earnback period of approximately 1.8 years using the crossover method. On a pro forma basis, the business is expected to deliver top-tier operating and return metrics with cost savings on a fully-phased in basis, including return on average tangible common equity in excess of 17% and return on average assets in excess of 1.5%. For additional information, please see the investor presentation associated with this announcement at www.fdef.com/Presentations or ir.ucfconline.com.

Keefe, Bruyette & Woods, *A Stifel Company* served as financial advisor and provided a fairness opinion to First Defiance. Barack Ferrazzano Kirschbaum & Nagelberg LLP served as First Defiance's legal counsel. Sandler O'Neill + Partners, L.P. served as financial advisor and provided a fairness opinion to United Community. Wachtell, Lipton, Rosen & Katz served as United Community's legal counsel.

42.     Shortly after the Proposed Transaction was announced, Sandler O'Neill's financial analysts upgraded First Defiance from "Hold" to "Buy" and financial analyst Raymond James downgraded United Community from "Outperform" to "Market Perform."

**The Preclusive Deal Protection Devices**

43.     To the detriment of the Company's public shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

44.     Section 7.9 of the Merger Agreement ("United Community Acquisition Proposals") is a restrictive "no-shop" provision that prohibits the members of the Board from soliciting proposals relating to alternative offers or business combinations.

45.     Section 7.9(a) of the Merger Agreement strictly prohibits, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations

relating to proposals regarding alternative acquisitions or business combinations

46.     Among other things, Section 7.9(a) of the Merger Agreement requires the Board to provide First Defiance with written notice of any United Community Acquisition Proposal within twenty-four (24) hours of its receipt, and further requires that the Board provide prior written notice of its intention to terminate the Merger Agreement due to receipt of a Superior Proposal so that First Defiance may negotiate with United Community following United Community's receipt of a Superior Proposal by adjusting the terms and conditions of the Merger Agreement so that the United Community Acquisition Proposal ceases to be a Superior Offer.

47.     In addition, the Merger Agreement provides that the Company will be required to pay to First Defiance a termination fee of $18,400,000.00 (roughly 4% of the total value of the transaction) with respect to any termination under the No-Shop provisions of the Merger Agreement.

48.     Ultimately, these preclusive deal protection devices restrained and continue to restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company, and further restrain the Company's public stockholders' ability to disapprove the Proposed Transaction.

49.     Indeed, the Proposed Transaction was negotiated through a flawed and conflicted sales process pursuant to which United Community did not entertain any competing offers from other counterparties in spite of their interest because of the difficulty in completing a merger in the "near-term."

50.     The aggregate effect of the preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for the Company's shares in the Proposed Transaction and the flawed and conflicted sales process pursuant to which the Proposed Transaction was negotiated, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

51.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

**The Registration Statement Omits Material Information**

52.     On or about October 9, 2019, in order to convince United Community's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of the materially incomplete and misleading Registration Statement with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

53.     The special meeting of United Community stockholders to vote on the Proposed Transaction is forthcoming.   The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Registration Statement misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

54.     Specifically, the Registration Statement omits two types of material information: (i) information regarding the background of the transaction and the Individual Defendants' potential conflicts of interest, and (ii) information that renders the Company's Financial Advisors' fairness analysis materially false, misleading, or incomplete.

**A.  The Registration Statement Omits Material Information Regarding the Background of the Transaction**

55.     The Registration Statement states that United Community and First Defiance executed a mutual non-disclosure agreement, but fails to disclose whether First Defiance was subject to a standstill agreement throughout the negotiations process.   This information is material to shareholders deciding how to vote on the Proposed Transaction because the failure to execute a standstill agreement with First Defiance would tend to indicate that the Board treated a combination

with First Defiance as a *fait accompli*.  Given that the Company effectively "shut out" any other potential counterparties and engaged in extensive negotiations regarding governance and management prior to valuing the Company itself, the Company's public shareholders would undoubtedly wonder whether or not the Company treated First Defiance like it would any other potential counterparty.

56.    With respect to the Board meeting that occurred on May 23, 2019, the Registration Statement fails to disclose: (i) whether this was a regularly scheduled meeting or was a special meeting that was called to discuss a potential transaction with First Defiance, (ii) whether the Board instructed Small regarding governance issues in a potential combined company, and (iii) whether the Board discussed the possibility that Small may be conflicted in negotiating governance issues such that the Board should consider appointing a Special Committee to lead negotiations rather than allowing Small to negotiate the terms of the merger at the same time that he was negotiating prospective employment in the combined company.  This information is material to shareholders because it pertains to how, if at all, the Board sought to avoid the existence of conflicts of interest and pertains to whether the Company treated the merger with First Defiance as a *fait accompli* from the outset.

57.    With respect to the Board meeting that occurred on July 23, 2019, the Registration Statement states that Sandler O'Neill reviewed "potential strategic alternatives to the proposed transaction with First Defiance," but fails to: (i) identify any potential strategic alternatives that were reviewed other than "continuing to focus on organic growth as an independent company," and (ii) disclose the substance of Sandler O'Neill's analysis with respect to any potential strategic alternatives other than continuing as a standalone company.  As the Registration Statement does not identify any other proposals, it is impossible to determine what other "potential strategic alternatives" were addressed by Sandler O'Neill at the July 23, 2019 meeting.  As financial analysts at Sandler O'Neill

upgraded First Defiance and financial analysts at Raymond James downgraded United Community following the Proposed Transaction, knowing the alternatives identified and the substance of Sandler O'Neill's review regarding those alternatives would undoubtedly be material to shareholders deciding whether to vote for or against the Proposed Transaction.

**B.   The Registration Statement Omits Material Information Regarding the Financial Advisors' Fairness Analysis**

58.   The Registration Statement also omits material information regarding the Company's Financial Advisors' Fairness Opinion and the various valuation analyses that the Company's Financial Advisors performed to render the opinion but fails to provide enough information regarding the necessary data, support for conclusions, or the existence of, or basis for, the underlying assumptions that underpin the fairness opinion.  Specifically, the Registration Statement does not disclose enough information regarding the financial projections, inputs and assumptions for various financial valuations.  Without this information, stockholders cannot replicate the analyses, confirm the valuations, evaluate the Financial Advisors' opinion that the Merger Consideration is fair, or accurately assess the reliability of the Fairness Opinion.  The informative value of the Fairness Opinion is not in its conclusions, but in the valuation analyses that support them.  Thus, the key inputs, which are intrinsically baked into those conclusions, must also be fairly disclosed.

59.   With respect to the management projections, the Registration Statement fails to disclose material information. With respect to these financial projections, directors are obligated to provide complete valuation metrics to shareholders, particularly in cash-out transactions where non-GAAP metrics were used by the banker, since such metrics are not uniformly defined and shareholders are therefore unable to assess the utility and legitimacy of the actual metrics without seeing the underlying components.  Notably, the Registration Statement fails to provide all of the financial projections provided by the companies' management and relied upon by the Company's

Financial Advisors in rendering their opinions.

60.    Notably, the Registration Statement fails to provide any projections whatsoever for the pro forma combined company, and further fails to provide cash flow projections for the standalone companies, instead providing projections of the standalone companies' Net income, Earnings per share, and Dividends per share.

61.    With respect to Sandler O'Neill's *Comparable Company Analyses* beginning on Page 84, the Registration Statement fails to disclose (i) Sandler O'Neill's rationale and basis for excluding targets of announced merger transactions and mutual holding companies from its analysis, (ii) the enterprise values and individual benchmarks and multiples for each of the companies selected. Without this information, it is impossible for shareholders to know which of the selected companies were, in fact, most similar to United Community and First Defiance, and whether the analysis effectively undervalues United Community and/or overvalues First Defiance.

62.    With respect to Sandler O'Neill's *Net Present Value Analyses*, the Registration Statement fails to fully disclose Sandler O'Neill's rationale and basis for selecting: Price to 2023 earnings multiples ranging from 10.0x to 15.0x, (ii) multiples of December 31, 2023 tangible book value ranging from 130% to 205%, (iii) discount rates ranging from 11.0% to 15.0%, and (iv) possible earnings variations from projected earnings ranging from 20% below projected earnings to 20% above projected earnings.  Without knowing how Sandler O'Neill determined these ranges or why Sandler O'Neill selected the same ranges for both United Community and First Defiance, it is impossible to determine whether Sandler O'Neill's inputs and assumptions were reliable and how much weight, if any, to place in the *Net Present Value Analyses*.

63.    Regarding Sandler O'Neill's *Pro Forma Transaction Analysis* beginning on Page 88, the Registration Statement omits entirely the projected quantitative impacts, and instead boils the analysis down to blanket statements that "the transaction could be accretive to First Defiance's

estimated earnings per share (excluding one-time transaction costs and expenses) in the years ending December 31, 2020 through December 31, 2023 and dilutive to First Defiance's estimated tangible book value per share at close and at December 31, 2020, and accretive to First Defiance's estimated tangible book value per share at December 31, 2021, December 31, 2022, and December 31, 2023." The amounts of these projected financial impacts is material information. Further, the Registration Statement states that Sandler O'Neill discussed with the Board "how the analysis would be affected by changes in the underlying assumptions" but fails to state how changes in the pro forma combined company's financial performance would affect the results of the *Pro Forma Transaction Analysis*.

64.    With respect to the Fairness Opinion generally, the Registration Statement is materially misleading to investors because the Fairness Opinion omits analysis regarding what type of acquisition premium is ordinarily paid in similar transactions. Indeed, the Registration Statement expressly *excludes* any companies that were otherwise comparable because—like United Community—they were the target of an acquisition.

65.    If a proxy discloses financial projections and valuation information, such projections and valuations must be complete, accurate, and honest. The question is not simply whether there is a duty to speak, but also whether there may be liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the information related to the projections, assumptions, and inputs relied upon by Defendants' financial advisors, but have omitted crucial line items, reconciliations, and other information. Thus, Defendants' omission renders the projections disclosed in the Registration Statement misleading.

66.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

69.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

70.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

71.     Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding the valuation analyses performed by the Company's Financial Advisors in support of its fairness opinion.

72.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

73.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that the Company's Financial Advisors reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by the Company's Financial Advisors, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the

sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the Company's Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the Company's Financial Advisors as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

74.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

75.     The Company is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

76.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

77.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

78.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

79.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

80.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

81.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

82.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

83.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

84.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 16, 2019

**MONTEVERDE & ASSOCIATES PC**

By:   */s/ Juan E. Monteverde*
      Juan E. Monteverde (JM-8169)
      The Empire State Building
      350 Fifth Avenue, Suite 4405
      New York, NY 10118
      Tel:(212) 971-1341
      Fax:(212) 202-7880
      Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**ADEMI & O'REILLY, LLP**
Guri Ademi
Jesse Fruchter
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
Email: gademi@ademilaw.com
      jfruchter@ademilaw.com

*Attorneys for Plaintiff*